Kenneth D. Freundlich (SBN 119806)
Jonah A. Grossbardt (SBN 283584)
Hugh H. Rosenberg (SBN 360544)
**FREUNDLICH LAW, APC**
Ken@Freundlichlaw.com
Jonah@Freundlichlaw.com
Hugh@Freundlichlaw.com
16133 Ventura Blvd., Suite 645
Encino, CA 91436
Telephone: 818-377-3790
Facsimile: 310-275-5353

Attorneys for Plaintiffs
Eothen Alapatt, derivatively on behalf of Madicine Show, LLC, a California limited liability company, and Eothen Alapatt

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EOTHEN ALAPATT, derivatively on behalf of MADICINE SHOW, LLC, a California limited liability company; and EOTHEN ALAPATT, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>OTIS JACKSON, JR., p/k/a MADLIB,<br><br>        Defendant,<br><br>-and-<br><br>MADICINE SHOW, LLC,<br><br>        Nominal Defendant. | Case No.<br><br>**VERIFIED DERIVATIVE COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

Plaintiffs Eothen Alapatt, derivatively on behalf of Madicine Show, LLC, a California limited liability company ("Madicine Show"), and Eothen Alapatt ("Alapatt") (collectively "Alapatt Plaintiffs"), individually, by and through undersigned counsel, brings this Verified Complaint against Defendant Otis Jackson, Jr., p/k/a Madlib ("Jackson") for declaratory relief under the laws of the United States, and in support thereof states as follows:

## INTRODUCTION

1. Alapatt Plaintiffs bring this action under 28 U.S.C §§ 1338(a) and 2201-2202 to resolve an active and concrete controversy over the ownership of certain sound recordings created, exploited, and managed by Madicine Show, an LLC co-owned by Alapatt and Jackson.

2. For more than a decade, Alapatt and Jackson operated as equal partners in Madicine Show, a boutique catalog of hip-hop recordings born from Jackson's raw beats and elevated into finished works through collaborations with artists such as Freddie Gibbs, Kieran Hebden, and Mac Miller. These collaborations were all organized and produced under Alapatt's business acumen, artistic direction, and creative network that turned Jackson's works into commercially viable releases (the "Works"). A true and correct copy of the list of works at issue is attached hereto and marked **Exhibit A**.

3. The business's success rested on that combination. Jackson granted to Madicine Show the rights necessary to exploit his recordings; Alapatt, in turn, managed their licensing, distribution, and collaboration with third-party artists. For years, the arrangement worked seamlessly and profitably.

4. In recent years, that balance collapsed. Influenced by his new transactional counsel, Jackson turned against Alapatt and the enterprise they

built, bringing a state-court action against Alapatt, Madicine Show, and Rapp Cats LLC, an affiliated company owned by Alapatt, Jackson, and Jeffrey Carlson ("Jank"), and also Jank in his individual capacity.

5.     A new development in that case – Jackson's application for appointment of a receiver to oversee the dissolution and wind-up of Madicine Show, which was granted – has made immediate federal intervention necessary. Central to any wind-up will be the disposition of the Madicine Show's most valuable assets: the copyrights in the recordings Jackson created and licensed to the company. Jackson now claims those works as his personal property and seeks to withdraw them entirely from Madicine Show's catalog.

6.     That is not how the law works. The recordings at issue were created and exploited pursuant to a licensing relationship between Jackson and Madicine Show. They remain company assets, and their ownership must be determined under the Copyright Act. Jackson's position is mystifying, as in many instances, the recordings are also subject to third-party contracts with collaborating artists that expressly provide for their eventual return to Madicine Show after fixed terms.

7.     Alapatt thus brings this action to obtain a judicial declaration of the parties' respective ownership rights in those recordings, to confirm that Jackson's works are rightfully the property of Madicine Show, and to ensure that the copyrights and related assets are properly accounted for a distributed in accordance with federal law.

## JURISDICTION AND VENUE

8.     This action arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. § 1338(a),

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

1    which grants the district courts original and exclusive jurisdiction over any

2    civil action arising under the copyright laws of the United States.

3          9.    An actual and justiciable controversy exists between the parties

4    concerning the ownership and disposition of copyrights in sound recordings

5    created and exploited by Madicine Show, LLC. Alapatt Plaintiffs seek a

6    declaration of the parties' respective rights in those works under the

7    Copyright Act.

8          10.   Venue is proper in this District under 28 U.S.C. §§ 1391(b) and

9    (c) because a substantial part of the events giving rise to the claim occurred

10    in this district, and all parties reside and conduct business therein.

11          11.   The Court has personal jurisdiction over the Defendant because

12    he resides in this District.

13    **<u>PARTIES</u>**

14          12.   Plaintiff Alapatt is an individual residing in Los Angeles

15    County. He is a music producer and businessperson who co-founded

16    Madicine Show with Jackson. Through Madicine Show, Alapatt managed,

17    developed, and produced a catalog of recorded music derived from beats

18    supplied by Jackson, pairing those compositions with performances by

19    recording artists and overseeing their commercial release and exploitation.

20          13.   Nominal-Defendant Madicine Show is a California limited

21    liability company with its principal place of business in Los Angeles

22    County. Alapatt and Jackson are the sole members of Madicine Show. The

23    company functions as a bespoke music-catalog enterprise engaged in the

24    creation, licensing, and distribution of recorded works, including those at the

25    center of this dispute.

26          14.   Defendant Jackson is an individual residing in Los Angeles

27    County. He is a music producer and recording artist who collaborated with

28    Alapatt through Madicine Show.

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

1

## DEMAND WAS FUTILE AND THUS EXCUSED

2       15.    Alapatt has not made a demand on the members or board to

3   institute this action against Nominal Defendant Medicine Show because for

4   the reasons detailed above and as further set forth below, any such demand

5   would be a futile and useless act.

6       16.    As to Medicine Show, Alapatt and Jackson each own one half

7   of the membership interests and therefore a demand by Alapatt to Jackson

8   would be futile.

9       17.    Alapatt fairly and adequately represents the interests of

10  Medicine Show.

11      18.    This action is not a collusive one to confer jurisdiction that the

12  court would otherwise lack.

13      19.    The facts detailed in his First Amended Complaint ("FAC")

14  that was filed in The Superior Court of California County of Los Angeles

15  demonstrate that Jackson affirmatively adopted, implemented, and condoned

16  a business strategy based on deliberate and widespread theft of Medicine

17  Show's assets and business opportunities for his own account, which is not a

18  legally protected business decision and can in no way be considered a valid

19  exercise of business judgment. Accordingly, demand on the board of

20  Medicine Show is further excused.

21  ## FACTUAL ALLEGATIONS

22      20.    Beginning in 2011, and for more than a decade thereafter,

23  Alapatt and Jackson worked side-by-side as partners in Medicine Show,

24  LLC, a boutique music-catalog enterprise based in Los Angeles. Their

25  collaboration was both creative and entrepreneurial: Jackson generated beats

26  and instrumental compositions; Alapatt shaped those materials into finished

27  songs by pairing them with vocal and instrumental performances from

28

recording artists and guiding each project from conception through commercial release.

21.    The venture prospered. Under Alapatt's creative direction and through his industry relationships, Madicine Show cultivated a distinctive body of recorded work and earned a respected reputation among hip-hop artists, record labels, and fans. Recordings built from Jackson's underlying beats were developed into finished compositions through performances by artists including Freddie Gibbs, Kieran Hebden, and Mac Miller, all of which were facilitated, supervised, and produced by Alapatt. Throughout its existence, Madicine Show's catalog generated consistent revenue and recognition within the independent hip-hop community.

22.    Despite the collaborative nature of the venture, Jackson later claimed that he alone owns all copyrights in the Madicine Show recordings and compositions. This position ignores the parties' mutual understanding and Alapatt's creative, financial, and managerial contributions. Throughout the relationship, the parties worked together under a shared arrangement in which Alapatt's company financed, produced, and released the works, and Jackson contributed the underlying beats and production elements with the understanding that the finished recordings would be developed and released through Madicine Show. Jackson granted Madicine Show permission to reproduce, distribute, and commercially exploit the works, and the company relied on that authorization to invest time, money, and resources to build its catalog and reputation. After benefiting from that arrangement, Jackson cannot revoke or withdraw those rights or claim exclusive ownership of works that were created, produced, and marketed under Madicine Show's direction.

23.    Jackson necessarily granted Madicine Show the rights necessary to exploit his beats. At all relevant times, the works Jackson

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

1  contributed were provided to Madicine Show for its use and

2  commercialization, not for Jackson's unilateral ownership or control.

3  Jackson and Alapatt's consistent course of dealing and communications as

4  partners in the enterprise reflected that reality.

5      24.    For years this arrangement functioned without controversy and

6  indeed flourished. That all changed in or about 2022, when Jackson, having

7  been led astray by his new transactional attorney cum manager, cut off

8  communication and cooperation with Alapatt and the business. Despite

9  Jackson's stonewalling, Alapatt continued to run the business at a profit. In

10  2024, Jackson put another knife in the back of Madicine Show in when he

11  created a new music entity called Madlib Invazion, LLC, which was the

12  same name that Madicine Show used publicly as its DBA. The confusion

13  that resulted in the minds of the music industry and fans of the business need

14  not be belabored.

15      25.    The final betrayal came later in 2024, when Jackson filed a

16  state-court lawsuit (Case No. 24STC903525 in the Superior Court of

17  California, County of Los Angeles) against Alapatt, Madicine Show, and

18  Rapp Cats (another venture co-owned by Alapatt, Jackson, and Jank), and

19  Jank individually, with claims for the Judicially Supervised Dissolution and

20  Wind Up of the entities; Breach of Statutory Duties of Loyalty, Care, and

21  Good Faith; Breach of Common Law Fiduciary Duty; and Declaratory

22  Relief. Jackson's allegations are entirely without merit.

23      26.    A recent development in that litigation has made this separate

24  federal action necessary. Jackson petitioned the state court for appointment

25  of a receiver to oversee the dissolution and wind-up of Madicine Show. At

26  the center of that proposed wind-up lies the question of who owns the

27  copyrights in the recordings created and exploited by Madicine Show as

28  Jackson has made the tenuous argument that those recordings are his

personal property and seeks to withdraw them from the company's assets. Over Alapatt's strenuous arguments against the receivership, the Judge granted Jackson's application for a receiver.

27.    Jackson's position as to the ownership of the recordings is contrary to law and fact. They were licensed to Madicine Show for use in its business, not loaned to the company only to be revoked by Jackson unilaterally. Under the Copyright Act and pertinent course of conduct, the copyrights are owned, co-owned, or controlled by an implied license by Madicine Show and must remain within its catalog to be properly administered and distributed in the dissolution. Thus, Alapatt's hand has been forced in instituting this federal lawsuit.

28.    Alapatt's position is bolstered by the fact that many of the recordings are subject to existing third-party contracts with collaborating artists that expressly provide that, following specified terms, the recordings will revert to Madicine Show. Removing those works from the company's catalog would breach those agreements, disrupt artist relationships, and impair the value of the catalog itself.

29.    An actual and immediate controversy now exists. Unless and until this Court determines the parties' respective ownership rights, the status of the recordings will remain uncertain, jeopardizing current and future exploitation and impeding the orderly wind-up of Madicine Show.

**First Cause of Action – Declaratory Relief for Copyright Ownership (17 U.S.C. §§ 101 et seq.; 28 U.S.C. §§ 1338(a), 2201-2202) (By Alapatt Derivatively on Behalf of Madicine Show Against Jackson)**

30.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 23 as though fully set forth herein.

31.    An actual and justiciable controversy exists between Madicine Show, Alapatt, and Jackson concerning ownership of the copyrights in the

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

recordings created by and exploited through Medicine Show. Alapatt contends that those recordings were licensed or otherwise conveyed to Medicine Show for use in its business and they remain company assets. Jackson contends that he individually owns the recordings and may withdraw them at will.

32. Resolution of this controversy requires interpretation and application of the Copyright Act, including 17 U.S.C. §§ 101, 201, 204, and related provisions governing ownership, transfer, and licensing of copyrighted works.

33. Alapatt seeks a declaration pursuant to 28 U.S.C. § 2201 that:

a. The sound recordings at issue were created and exploited through Medicine Show under licenses granted by Jackson to Medicine Show;

b. The copyrights in those works are owned or co-owned by Medicine Show and not solely by Jackson;

c. Jackson has no right to unilaterally revoke or withdraw those works from the Medicine Show catalog; and

d. Any proceeds, royalties, or reversionary rights relating to the works are to be administered and distributed in according with Medicine Show's ownership interests.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court:

1. Declare that the sound recordings at issue are owned or co-owned by Medicine Show LLC and not by Defendant Jackson individually;

2. Declare that Defendant Jackson has no right to unilaterally revoke, withdraw, or otherwise interfere with Medicine Show's ownership or exploitation of those works;

FREUNDLICH LAW, APC
ENCINO, CALIFORNIA

3.    Issue such further declaratory and injunctive relief as may be necessary to effectuate the Court's determination; and

4.    Grant such other and further relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED:  November 10, 2025

FREUNDLICH LAW APC

*/s/ Kenneth D. Freundlich*
Kenneth D. Freundlich
Jonah A. Grossbardt
Hugh H. Rosenberg
Eothen Alapatt, derivatively on behalf of Madicine Show, LLC, a California limited liability company, and Eothen Alapatt

1

## VERIFICATION

2

    I Eothen Alapatt, am a party to this action and a member of Madicine

3

Show, LLC. I have read through the foregoing Verified Derivative

4

Complaint and know its contents. The statements made therein are true of

5

my own knowledge, except as those matters stated on information and

6

belief, and as to those matters, I believe them to be true.

7

    I declare under the penalty of perjury under the laws of the State of

8

California and of the United States that the foregoing is true and correct.

9

    Executed this 10th day of November 2025, at Los Angeles, California.

10



11

12

    Eothen Alapatt

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FREUNDLICH LAW, APC**
ENCINO, CALIFORNIA